Good morning. Welcome to this week of oral arguments in the Eleventh Circuit. I appreciate your being patient with us this morning as we started a little bit late. I'll remind you that the court has read your briefs, looked at the most important parts of the record, and we are familiar with your cases, so feel free to get directly into the heart of your argument. And don't forget about our traffic light system of timing, where when the yellow light goes on, that means you have two minutes remaining in your allotted time. And when the red light comes on, please do quickly conclude your remarks, unless you're answering a question from the court, and if that's the case, then you may finish your answer. Our first case of the morning is 23-13776, United States of America v. Michael Prime. Ms. Castaneda. May it please the court, good morning. On behalf of the appellant, Mr. Michael Prime, my name is Rebecca Castaneda. Thank you for your time and consideration of our presentation here today. Cryptocurrency is real. It's not phantom. It is an asset. It is property. It has value. 3,444 bitcoin has substantial value. But the value I am addressing here today is the one in which every American should enjoy, constitutional due process. We appear today to address a grave violation of Mr. Prime's constitutional rights under the Due Process Clause of the Fifth Amendment. The United States government seized Mr. Prime's property in accordance with statutory requirements, and then allegedly subsequently destroyed the property. The government now seeks to justify its actions by asserting authority it did not possess, and alternatively by claiming entitlement to destroy the property, even in the absence of such authority. These actions are not only unlawful, but also fundamentally incompatible with the constitutional protections of foreign... Can I ask you just a preliminary question, counsel? What relief are you seeking? We ask for a remand for resentencing and the opportunity to prove the seized assets were not the result of criminal activity. And then what is it you want? The opportunity to present a case shown... But you want what? What do you want the government to do here? Return bitcoin that was not the fruit of criminal activity, and the opportunity to do so. And how would the government go about it? Let's assume you're right about everything. It goes back to the district court. The district court says, okay, what relief you want? As I read your pleading, the relief you wanted was for the government to make you whole by giving you 3,443 bitcoin, right? That is correct. Not money, bitcoin.  Would you have the government... Just spin it out. For the government to go out on the open market and buy 3,443 bitcoin and give it to you? That would be great, but I don't believe that's an option. They do have it in seized assets. They store it in crypto wallets the same as anything else they seize from, for example... Like Fort Knox, they could go online into cyberspace and just give it to you? Each federal agency has the version of that that they store crypto in. Thank you. Are you suggesting that the government has and knows that it has this 3,000-something of bitcoin? We do. We believe the agent is aware of that and is still in possession of the actual hardware wallet. Isn't that contrary to what the government has stated? It's the exact opposite, yes. Well, isn't it also beyond what the court found? As I understood it, the key to the passage to get in and get access to the bitcoin was this Thunderbolt hard drive. Just bear with me a second. I thought that's what it was on, and whether they did it properly or improperly, the district court found as a fact that that hard drive was destroyed. Am I right or wrong about that? I don't believe they found that, Your Honor. The district court didn't find that it was destroyed? I don't believe so. I believe they argued that the doctrine of latches applied. I don't believe we ever were able to get into the facts of whether it was actually destroyed. The government asserts it was, but that's not supported by any affidavits, which is required in this circuit. The Secret Service agent should have completed a declaration explaining how it was destroyed, when it was destroyed, and proof that it was destroyed, and they did not do so in this case. Let me read to you from the transcript of the hearing on November 14, 2023. On page 19, line 24. Anyway, I find that he was given notice and that they were properly destroyed, referring to the things we're talking about, all of the hardware. It strikes me, maybe the district court's right or wrong, but the district court makes an unambiguous finding that what the Secret Service had, they destroyed. Maybe they shouldn't have done it, but he found as a fact that indeed it was destroyed. Is that clear error? I think the word probably is where there's gray and why we filed and argued. I think he's wrong on that. He didn't say probably. He said, I'm going to read it again. Anyway, I find that he was given notice and that they were properly destroyed. Oh, I'm sorry. Not probably destroyed. That's at least what the district judge found. I believe that's erroneous because it was not completed with an affidavit that the agent swore to, and that's required in this circuit. Even if it was erroneous, you would have to show that it was clear error in order to set aside that fact finding, wouldn't you? Yes. Thank you. Given that, on what basis would you have this court conclude that it's clear error? I don't believe that the district court inquired properly as to whether that was actually destroyed. This circuit requires an agent to testify to something, whether that's in court or in a declaration, and that did not occur in this case. Isn't that for forfeiture though? I think you're saying that this property was never specifically subject to forfeiture, right? It wasn't, but because the United States asserts that it was, I followed that line of law. So because they're stating in the government's opposition to our return for property, no, this was subject to seizure, we did it properly, even applying their own argument to it, that was still not done. I'll be interested to ask the government about this, but there are various arguments made on both sides, obviously, but my ultimate takeaway is that the government thinks that probably it never existed in the first place. What's your response to that argument, given the inconsistent statements of whether he had Bitcoin or didn't have Bitcoin and how it kind of pops up and down at various times? I believe that the prosecutor believes that, but the defendant in this case sat down with the United States government and cooperated extensively and trained them on the black market of cryptocurrency and sat down and was at a workstation and showed them how to move crypto around, buy and sell and trade. And so I believe the agent knows of its existence, and I believe that's also why they probably didn't complete a declaration stating they had destroyed it. I am not sure why there's inconsistent positions between the prosecutor and the agent, but I think there's no question that the Bitcoin existed. What do you make of the statement at sentence by defense counsel? I'll quote it. He's given the government all of his passwords, password files on the computers, total access to everything on the computers. They copied them. They had a year and a half to look at them to try and find some great amount of Bitcoin, and frankly, at this juncture, it doesn't exist, other than what he had from his mining days in Seattle back almost 10 years ago when he had said he had 1,500 Bitcoin that he was paid for mining activities in Seattle. Defense counsel said they didn't find it, and it wasn't there. I believe that's referring to the word great, the great amount. So the United States government took the position that he had earned millions of Bitcoin when, in fact, he had earned Bitcoin from mining, but it was thousands, and so I think there's a disparity in the amount. And so even the defense counsel's statement acknowledges at the bare minimum, he still has Bitcoin that he mined in Seattle, and he was deprived even of that ability to show this is what I mined many years before, and then Bitcoin splits. So one Bitcoin can turn into two, and it no longer does that on the blockchain, but he was deprived of the ability to even show what happened before this case occurred, and the defense counsel acknowledges that. Well, he has some from his mining days, and perhaps the United States government and defense counsel at the time disagreed as to the amount of some, but even some is not zero. What would you have us do with the fact that when he was interviewed by the probation department prior to the time of sentence, and he made a financial disclosure as well, this is in February of 20, Mr. Prime reported that he owned $1,500 worth of Bitcoin from the period covering 2011 to 2018, which would amount to a fraction of one Bitcoin? That does not amount to what the government had in custody and had seized. That amount of Bitcoin is what was reported on a different account that he had not turned over to the government, and he explained that to the agent. You have your amount of Bitcoin. He didn't report that because they had it with him. They had it in their coffer, so to speak, and then this piece of Bitcoin was additional that he had to disclose. He said, I have this Bitcoin. They have the hardware wallet. They have access to it, and then he said, I also have this piece. I have just one final question. I'm sorry. The district court disposed of the claim under 41G, finding latches, that basically you were a day late and a dollar short asking for it, and specifically there's a gap of five years almost from the time the initial incident occurs to the time that you seek the return. Why isn't that a classic case of latches? What's the error in the district court's determination, and more pointedly, where's the abuse of discretion in the district court's finding of latches? The time for him to bring his claim for the return of his property did not arise until March of 2023, so he had his property seized. It was held during his incarceration of approximately two years. He was never noticed that it would be seized or destroyed. While other property was, that was not. There was additional forfeiture process, preliminary and final orders. He was then released from federal prison. He was then provided notice, if you'd like your things returned to you, come get them. He tries to do that. Secret Service then strings him along for a few months saying, oh, we're looking into your electronics, we're looking into this. It wasn't until March of 2023 was he told by the United States government, we have seized your cryptocurrency hardware wallet, and we are not giving it back. And it was thereafter that he then hired counsel, me. I engaged with the United States, and less than 90 days later, we filed suit stating we need to return it because it was never properly seized, so he never had the opportunity to say, I want this back now. If he had done that with the firearms or the printing equipment that was in the plea agreement. I'm confused a little bit about this. I understood that on a couple of occasions he did seek the return of his property. Specifically, he said, I want my cars back. I want my boat back. But he never asked for Bitcoin back. Just bear with me for one sec. And then he actually withdrew that application from the government. Are those facts accurate, or have I misapprehended? They are, but they're separate. He was not told that his Bitcoin had been permanently seized at that point in time. He believed they were holding, so when they arrested him and seized different property, they hold it. He's going to jail and they hold on to it. And the hardware wallet is an electronic little wallet. So they didn't refuse to give it back until after he was out of prison. So those yachts and the cars, I believe there was two of each, those were seized during the pendency of the case. And he contested those for a bit because those weren't properly forfeited either. And then I believe the government argued they were going to supersede and charge him with additional charges. I think it was 3,000 counts of identity fraud, to which he said, fine, keep the cars and keep the boats. But he didn't ask for the hardware wallet yet because it had not been permanently taken at that point. And the United States government had not provided any notice that they intend to keep it. And then in his plea agreement, they referenced, I believe it's 100 Bitcoin, but it's lined through. So the government knew that he had this. They actually wanted him to forfeit it, and it was a proposed contract term in the plea agreement. But then the parties agreed not to do that, and it's lined through. So he's under the belief, until he's released from prison, that he's getting his property back. So then when he's released, he goes to Secret Service, and they send him notices while he was in prison. If you want your things back, fill these letters out, which he did. So then when he goes to ask for this back, and the agent references it, do you still have your Bitcoin? And he's the only one, that federal agent has access to that Bitcoin. He's the only one that knows about it. And he's holding it, and he won't return it. And then he hires legal counsel. We contest that, and then we file. So he was never alerted to the fact that he would never have this substantial property seized until March of 2023. And we filed within a couple months of him realizing that they had created a delay in returning this property, and we're not going to give it back. What was the first date that he shared with the government that he had roughly 3,500 Bitcoin? In those terms. During the investigation of the case, it was pre-indictment. So when he was charged in the underlying district court case, it's referenced in the complaint. And the agent swore out to an arrest warrant, stating that he had 3,500 Bitcoin. It was a little bit less, but that's when the agent stated, he's using this Bitcoin to commit crimes. And then there's the description of all the things, firearms, electronics to create fake identities, and that type of thing. If the government thought that he had that much, and continued its conclusion that he had that much, and that he had used it to commit crimes, why would the government not have sought forfeiture of that amount of Bitcoin? I think because he helped them understand the black market of cryptocurrency. He received a 5K1.1 substantial assistance motion for assisting the United States government. And I think because he was willing to help them and show them the ropes of this dark side, they said, we're not going to seize this. And that happens in cases where you don't have a house seized or something like that. Is there any record of this, though? There is. Not of his cooperation, but of a trade of the Bitcoin for the cooperation. Well, there's a reference to the 5K1.1 in the sentencing transcript. It references he was honest and truthful, and he helped, and he showed black market. So in the transcript of the sentencing, yes. It doesn't say, and therefore we're not attempting, we're not planning to have him forfeit his Bitcoin. It doesn't say that exact statement. It references that he had Bitcoin from mining days in Seattle, but it doesn't reference, it's not in the record. It's not there. Just one more question about the record before you sit down. Was the only thing on that Thunderbolt drive the key to the Bitcoin wallet, or was there other information on there, such as the victim's personal information, anything like that? The only thing on there was Bitcoin. Thank you. Good morning, Your Honors. May it please the Court. Sean C. Aikinen for the United States. Much of what I've just heard from my friend on the other side is contrary to the record in this case, and I'll address what I can in the time that I have. The law and the facts, I think, should be straightforward, but Mr. Prime's constantly shifting assertions have, I think, created confusion on all sides. Suffice to say, Mr. Prime has made wildly different claims for years since his arrest in 2018, and he continues to shift the goalposts in this appeal. But the bottom line is this. There is no reason to believe that the United States ever possessed or controlled the purported Bitcoin that Prime seeks to recover in this case. There's no evidence of that, but even if everything that Mr. Prime now says is true, he has no right to recovery for two reasons. First, he can't proceed under Rule 41G because he admitted before the district court, and again in his opening brief in this court, that the United States cannot return his seized hard drive or whatever cryptocurrency keys it supposedly contained because the drive has already been destroyed. So this is the Rule 41 argument in our motion for summary affirmance. The second issue is that Mr. Prime long ago forfeited any claim to Bitcoin that he possessed or controlled in 2020 at the time of his plea agreement and sentencing, and this is the latches and the unclean hands arguments in our brief. So I'll start with the threshold Rule 41 problem. Rule 41 does not allow damages, only equitable relief. But damages are all that Mr. Prime now seeks. He wants payment in the form of Bitcoin to, quote, make him whole for the supposed destruction of private keys that allegedly would have unlocked a large amount of Bitcoin residing on the public blockchain. He's long ago abandoned any claim for the return of the hard drive or the keys themselves, and for that reason, Rule 41G provides no recourse. And on this point, I would refer the court to— Is the Bitcoin cash or is it an intangible asset of a different kind or character? It's certain—I would not say it's cash. As to the second definition, maybe that might fit. Isn't it sort of like I own one share of Coca-Cola stock. There are three billion shares outstanding. I have a claim to a very, very, very small piece of Coca-Cola. There's an analogy. It's kind of intangible. I've got a piece of paper that says, Marcus, you've got one share of Coca-Cola. Isn't it kind of like that? Kind of, and there is an argument to be made to stocks. Let me take a minute to try to explain how I understand Bitcoin to work. So Bitcoin itself does not reside on a hard drive or even in a wallet. It exists on a permanent and immutable public ledger of all historical Bitcoin transactions. That is the blockchain. It's just a ledger. Every time somebody transfers Bitcoin, it is added to this ledger, which is public, and it's constantly promulgated across every device in the world that the miners are running to perpetuate this. And that public record is how we know where Bitcoin is stored, where it has been transferred to and from. Someone owns or possesses Bitcoin if they have the private key associated with the specific address where their Bitcoin has been stored on the blockchain. And that private key is just an astronomically large number. That's all. Now, the private key may be stored on a hard drive or in a wallet, or it may just be written on a piece of paper, or in theory, it could even be memorized. But the significance of it is this. To own or possess Bitcoin simply means to know or have exclusive access to the private key that, in turn, unlocks and controls, allows the transfer of whatever Bitcoin is stored in the address associated with that private key. With the private key, you can transfer or spend Bitcoin stored at that address. But the question is, what is Bitcoin? We understand you're talking about how to get access to it, but what is this beast, Bitcoin? Is it money? You said you concede it isn't money. So it doesn't help you if it's of a somewhat different character of personal property. It's kind of inchoate, but it's like a stock certificate, although that's not quite right. To be clear, I didn't mean to say that it's not money. What I said was that it's not cash, and what I mean by that is it's different than fiat currency. It's not the same as legal fiat U.S. tender. That's all I meant by that, Your Honor. It can be used as money. It can be used as a medium of exchange or as a store of value like gold and silver. It can be used in many ways. To answer your question, what is it? I would say it is this permanent immutable ledger that is constantly promulgated by all the miners in the world who are mining Bitcoin to preserve this ledger and promulgate it, and it's just a record of where different amounts of the asset are stored at all of the different addresses. Do we have to answer that question to resolve the question of latches? No, you don't have to answer that. And latches is the second issue. I mentioned that there are two reasons why Mr. Prime is not entitled to recover, even if everything that he says is true. The first was the Rule 41G issue. The second is that he has no equitable right to assets that he expressly denied possessing when it was time to disclose them. This is latches or unclean hands. I thought that goes to unclean hands rather than latches, because I understand the idea of latches. The claim is you waited too long, you sat on your thumbs, you didn't pursue your remedy until way too late, and if you're allowed to pursue it late, it comes to the decided disadvantage of the other side. That's latches. Unclean hands is a different kind of problem. It isn't you were too late at the starting gate. It's that you did something wrong, and therefore we're not going to allow you to seek an equitable remedy from a court. So help me with latches. Why were they too late here? She says from March 23 to the time they acted was very prompt. Tell me why that's wrong. The government does not allege that there was any improper delay in 2022 and 23. The issue is that Mr. Prime executed a plea agreement with the United States in 2019 where he promised to identify and divulge all assets within his custody or control. Then he completed a financial disclosure form in February 2020, disavowing any significant amount of Bitcoin in his possession, custody, or control. He said in that form that he owned only $200 to $1,500 worth of Bitcoin at that point in time and nothing else. That would have been a small fraction of one Bitcoin at the then-present exchange rate. Then at sentencing, as Your Honor has discussed earlier with opposing counsel, Mr. Prime's counsel expressly denied in no uncertain terms any significant remaining Bitcoin assets in Mr. Prime's custody. I'd like to make another point. I just want to be clear in my mind what the argument is. I think I hear you to be saying, one, there's nothing to return because we don't have anything, and he conceded that there was nothing there other than $1,500 worth of Bitcoin.  The second argument, as I hear you saying it, is even if there was something there, it's been destroyed. We have no way to get access to it. We gave notice, and they were a day late and a dollar short in coming back and saying, hold it, secure it. Do I have that right? That's all true. I would further add that I don't think the notice matters because latches is an equitable defense, and what Mr. Prime is seeking here is an equitable remedy under Rule 41G. And the problem, to finish the point that I was starting to make on latches, the problem is that Mr. Prime should have disclosed all Bitcoin within his custody or control in 2020 at the time of sentencing, and he didn't do that. And so the district court in the United States accepted that he did not have any more Bitcoin in his possession, custody, or control, meaning none on any of the seized devices, which the record is very clear that we were searching those devices, attempting to find private keys on those seized devices in 2019 and in 2020. These are the two seizure warrants that are cited in the briefs, and we couldn't find anything. And Mr. Prime's counsel at sentencing argued that that was evidence that Mr. Prime had, in fact, nothing left to disclose because we tried, we searched the devices, we couldn't find anything, which is true, we did and we couldn't. And Mr. Prime's counsel said there's nothing there. At this point, frankly, it doesn't exist. So to make sure I understand the argument on latches, I think what I'm hearing is he didn't disclose that he had this amount of Bitcoin. His failure to do that in a timely fashion meant that the government destroyed this hard drive, not being aware of the fact that there was Bitcoin on it. We're assuming that there really was for purposes of this, right? So not being aware that there was this Bitcoin key on the hard drive, the government destroyed it because he had not indicated that it was on there, and therefore the delay, his delay in raising the issue of having this Bitcoin is what accounts for the destruction, and therefore latches applies. Is there something, is that the basic form of the argument? No, not really, Your Honor, because the prejudice. Right, but the government is prejudiced in giving back the Bitcoin because they didn't know about it before they destroyed the key. Not quite. Our argument is that the prejudice is that Mr. Prime hid this Bitcoin at the time of sentencing, assuming that it existed. He hid it. He didn't divulge it, and because of that, we did not have the opportunity to forfeit it. Now, he now says that this hard drive contained keys to thousands of Bitcoins that he obtained legally, separate and aside from the Bitcoin that he admittedly obtained by selling fake credit cards on the dark web, but the hard drive was replete with evidence of Mr. Prime's fraudulent scheme and with contraband relating to it, and on top of that, Mr. Prime said in his financial disclosure statement that the little remaining Bitcoin that he admitted having at that time in 2020 had been acquired between 2011 and 2018. That includes the three years from 2015 to 2018 when he was admittedly selling fake credit cards and IDs on the dark web for Bitcoin. So I would be surprised, to put it mildly, if Mr. Prime could have demonstrated that commingled Bitcoin on that hard drive was not connected to his admitted criminal activity. Right, but we've moved away from latches, and now you're talking about unclean hands. But help me with latches, which is the thrust of the question I was asking and Judge Grant was asking. Under the law, latches is an affirmative defense the United States has to establish. As I understand it, you've got to prove three things. One, a delay in asserting the claim. Two, that the delay was not excusable. And three, that there was undue prejudice. You've talked about undue prejudice, but tell me about the delay. What was the delay? How long did they sit on their hands when they should have pursued it sooner? Just tell me about the delay. The delay started in February 2020 when he completed the financial disclosure form claiming that he had only a small fraction of one Bitcoin. And it continued until some point in 2022, we don't know when, but it continued at least until he then finally, late in 2022 for the first time, claimed that this hard drive had private keys to over 3,000 Bitcoin. So that's the first time when this came up. Not until 2022 after he had been released from prison. He didn't, and it came up very late, he filed a pro se motion to appoint counsel to help him obtain his property that had been seized. This is document 75. And in that pro se motion, there's no mention of electronic devices. Just help me with the timing. When for the first time does he assert a right to 3,443 Bitcoin? At some point in late 2022, after his pro se motion to appoint counsel was filed, because it's not mentioned in that pro se motion, that's document 75. So the record is not clear on when he first brought this to the United States attention. He says that he raised this with the Secret Service agent. We don't know when, but clearly it could have been no earlier. It was not mentioned in document 75, which was filed in August of 2022. So in August of 2022, still, he's only seeking the return of the boats, the cars, and money that had been seized. So when for the first time does he assert the claim to 3,443 Bitcoin? I don't know exactly. It's not in the record, but it's no earlier than then. I thought it was in the record, and maybe I've misunderstood it. I thought he asserted his claim to it when he filed his 41G motion to recover 3,143 Bitcoin on September 1, 23. Isn't that the first time he asserts a claim? I would say that's the first evidence in the record of it, yes. That's all I have is the record before me. So that's the first instance where he's asserted the claim. Do I have that right? Yes, that's the first evidence in the record, yes. The reason I was equivocating is that Mr. Prahn claims, although he doesn't cite anything in the record, that he brought this to the United States attention earlier than that. I apologize. That's why I was pushing back on that, Your Honor. But I do agree that that motion is the first evidence in the record of him raising this. Years after February 2020 when he stated on his financial disclosure form that he had only a small fraction of one Bitcoin. I see my time is up. If I could just make a few quick points in closing. Can I ask you one more question before you do that? Once counsel, your friend on the other side, asserted that the 3,500 Bitcoin amount was, I think it was maybe in the first criminal complaint. Can you address that? I don't recall if it was in the criminal complaint, but the factual basis of the plea agreement says that Mr. Prime said that he at one point in time had that much Bitcoin. The government has never admitted that he had that much Bitcoin. And even the plea agreement and the financial disclosure form and the sentencing transcript I think collectively indicate that what Mr. Prime was telling the government and the court at that time was that he used to have significant Bitcoin, but that he had spent almost all of it on these boats and these cars that were seized and forfeited. So that's what the record collectively shows to me. Thank you. So the last point that I would make in closing is that if Mr. Prime had honestly had thousands of Bitcoin at the time of sentencing, he was required to disclose them and he promised to do so as a condition of his plea agreement. Not only did he not disclose them, he insisted that he no longer had any Bitcoin. And he asked the judge for mercy at sentencing because according to Prime, he had, quote, lost everything and would need to restart his life after this was over. This is page 10 of the sentencing transcript. Years later, now that this is over, he now claims that he had the keys to thousands of Bitcoins that are now worth hundreds of millions of dollars and would have been worth tens of millions of dollars at the time of sentencing all along. If that's true, there would be nothing equitable about now allowing Prime to suddenly assert a legal or equitable right to those hidden assets. Thank you. Thank you. Ms. Castaneda. Thank you. Mr. Prime respectfully requests that this court order a resentencing of the seizure and I'll hand the opportunity to demonstrate that the Bitcoin he mined is not the product of criminal activity. The principles of due process and fundamental fairness demand no less. Thank you for your time and consideration. Thank you, counsel. Next up, we have case number 24.